UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

PATRICIA HARRINGTON, individually and
on behalf of all others similarly situated,

        Plaintiff,

    v.

AIRBNB, INC.,

        Defendant.

Case No. 3:17-cv-00558-YY

FINDINGS AND
RECOMMENDATIONS

YOU, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Patricia Harrington ("Harrington") originally filed this case in Multnomah County Circuit Court against defendant, Airbnb, Inc. ("Airbnb"), on March 6, 2017. Airbnb operates an online platform that allows "hosts," consisting of Airbnb users who wish to offer accommodations, to connect with and rent to prospective "guests," who are Airbnb users seeking to book those accommodations on a short-term basis. Hosts post listings on the Airbnb webpage, offering guests the opportunity to stay in a variety of accommodations around the world, from shared spaces to entire homes. Airbnb has members and listings in 35,000 cities around the world, including cities throughout Oregon.

1 – FINDINGS AND RECOMMENDATIONS

Harrington contends that discriminatory Airbnb hosts regularly take advantage of Airbnb's booking policies to deny booking requests from prospective guests on account of protected characteristics, including race, in violation of Oregon's statutory prohibition of unlawful discrimination in public accommodations, ORS 659A.403.

On April 7, 2017, Airbnb filed a Notice of Removal to this court (ECF #1), alleging jurisdiction under 28 U.S.C. §§ 1332(a) and 1332(d). Harrington has now filed a Motion to Remand (ECF #12), contending that Airbnb has failed to establish jurisdiction under either of those statutory provisions, and that this court should abstain, whether or not the jurisdictional requirements of those provisions are satisfied. This court concludes that Airbnb has satisfied its burden of establishing jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Accordingly, it need not and does not reach the parties' arguments as to whether this court has any other independent ground to assume jurisdiction over this case. This court also concludes that abstention is inappropriate. Accordingly, Harrington's Motion to Remand (ECF #12), and related request for attorney fees, should be denied.

## FINDINGS

### I. Allegations in the Complaint

Harrington alleges that Airbnb members who wish to rent accommodations through Airbnb's platform, and hosts who wish to offer accommodations for rent, must first become Airbnb members by registering and creating an account with Airbnb. Complaint, ¶ 9. Prospective guests must maintain a member profile that includes, among other things, a photo of the member's face and the member's full name. *Id*. ¶ 10. Through a setting on the Airbnb platform, hosts can opt to receive booking requests only from prospective guests whose profiles include certain specified information, such as a photograph or full name. *Id*. ¶ 12. Airbnb's

booking policies allow hosts to deny a booking request from a prospective guest whose profile includes a photograph and full name. *Id*. ¶ 13. Airbnb's booking policies preclude prospective guests from immediately booking an accommodation that is available on the dates requested, unless the host has opted in to the "instant booking" feature. *Id*. ¶ 14. If the host has not opted in to the "instant booking" feature, a prospective guest seeking to book an accommodation must "request a booking" and be approved by the host. *Id*. The booking request is forwarded to the host, who may either pre-approve, confirm, or reject the request within a specified time. *Id*. If the host does not respond to the request at all, the request expires and the prospective guest is not allowed to book the request.

Harrington is not, and never has been, a member of Airbnb. *Id*. ¶ 22. She asserts that she wishes to become a member of Airbnb and take advantage of Airbnb's offerings without any distinction, discrimination, or restriction on account of her race or color. *Id*. ¶ 23. Through counsel, Harrington requested that Airbnb allow her to become a member of Airbnb so that she and others similarly situated could access the public accommodations offered.

Harrington alleges that discriminatory hosts use Airbnb's booking policies to deny African-Americans access to accommodations. *Id*. ¶ 16. Accordingly, she alleges that Airbnb is directly liable for discrimination because its policies directly act to deny African-Americans full and equal accommodations, advantages, facilities, and privileges of a place of public accommodation. *Id*. ¶ 20. Further, she alleges that Airbnb is liable for aiding and abetting its hosts in unlawful discrimination by establishing policies that allow its member hosts to discriminate based on protected characteristics and by continuing to maintain such policies. *Id*. ¶ 21. She alleges a single claim for violation of ORS 659A.403 on behalf of "[a]ll African-

American residents of Oregon who are not currently, and have never been, members of Airbnb."
*Id*. ¶¶ 30, 40.

## II. CAFA Jurisdiction

### A. Amount in Controversy: Burden and Standard of Proof

In general, "'[r]emoval statutes are to be 'strictly construed' against removal jurisdiction.'" *Nevada v. Bank of Am. Corp*, 672 F.3d 661, 667 (9th Cir. 2012) (quoting *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002)). Consequently, the removing party bears the burden of demonstrating that removal is proper and "any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Guas v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992)); *see also Luther v. Countrywide Home Loans Serv. LP*, 533 F.3d 1031, 1034 (9th Cir. 2008).

However, the Supreme Court has held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, ___ U.S. ___, 135 S. Ct. 547, 554 (2014); *see also* S. Rep. No. 109–14, p. 43 (2005) (noting CAFAs "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant").

By its silence on the issue, CAFA left the burden of proof of establishing that removal was proper on the shoulders of the removing party. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684–85 (9th Cir. 2006) (*per curium*) (noting the legal context in which CAFA was passed featured "a longstanding, near-canonical rule that the burden of removal rests with the removing defendant" and congressional action inserting provisions broadening jurisdiction "indicate Congress carefully inserted into the legislation the changes it intended and did not

mean otherwise to alter the jurisdictional terrain"). Accordingly, while the "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," if the plaintiff contests or the court questions that allegation, "[e]vidence establishing the amount is required by [28 U.S.C.] § 1446(c)(2)(B)." *Dart Cherokee*, 135 S.Ct. at 554.

To satisfy CAFA's amount in controversy requirement, Airbnb "bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million. . . ." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020–21 (9th Cir. 2007) (citing 28 U.S.C. § 1332(d)(2)). Airbnb can satisfy that burden by submitting evidence outside of the pleadings, including affidavits or declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra*, 775 F.3d at 1197. The amount-in-controversy requirement is "tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id*. at 1198.

### B. "Option 3"

As the arguments developed on the present motion, Airbnb proffered three "Options" for calculating the monetary impact of this case and establishing that the amount in controversy exceeds CAFA's jurisdictional threshold. Harrington challenges those options as mere guesses as to what injunctive relief this court might eventually order. Harrington also: (1) challenges Option 3 as an unauthorized amendment to the Notice of Removal; (2) asserts that the costs associated with eliminating unlawful discrimination from Airbnb's policies, including the costs of making changes to its booking platform, may not be considered in evaluating the amount in

5 – FINDINGS AND RECOMMENDATIONS

controversy; and (3) contends that the evidence offered in support of Option 3 is not credible and is otherwise insufficient to carry Airbnb's burden of establishing jurisdiction. This court rejects these arguments and concludes that "Option 3," discussed in Defendant's Response to Plaintiff's Motion to Remand (ECF #14), Section III.C.2., and supported by the Declaration of Ruchit Solanski ("Solanski Decl.") (ECF #15), is both a reasoned analysis of the relief requested and sufficiently supported by evidence to establish CAFA jurisdiction.[1] Accordingly, for the reasons that follow, this court recommends that Harrington's motion to remand be denied.

### 1. Nature of the Claim and Equitable Relief to Cure Alleged Discrimination

The parties each contend that the other should have sought more information before either removing this case or before filing a motion to remand in order to identify with particularity the exact injunction the court should enter or to challenge the evidence submitted in support of remand. Whatever the merits of this standoff, the court's role is clear: when evaluating a challenge to assertions about the amount in controversy, the starting point is the pleadings. "In determining the amount in controversy, courts first look to the complaint." *Ibarra*, 775 F.3d at 1197. Here, the only form of relief presently requested is equitable relief in the form of an injunction. However, the pleadings do not specifically define the contours of the injunction requested, other than to state that it should be tailored to give members of the plaintiff

---

[1] "Option 1" and "Option 2" are discussed in Airbnb's Reply (ECF #18) at Section II.B. Option 1 (Notice of Removal, ¶ 14.b.iii) is premised on the notion that Harrington seeks an injunction requiring Airbnb to "create discriminatory policies." Option 2 (Notice of Removal ¶ 14.b.iv) is premised on the removal of all listings that do not have the "Instant Book" feature enabled. Both Option 1 and Option 2 were expressly offered in support of CAFA jurisdiction in the Notice of Removal. *See* Notice of Removal, ¶ 15.b.ii (incorporating ¶ 14.b.iii through ¶ 14.b.iv). Because this court concludes that Option 3, first discussed in Airbnb's response to the motion to remand, supports defendants' bid to have this court assume jurisdiction over this case, it need not and does not discuss the merits of Option 1 or Option 2 as possible avenues to establish CAFA jurisdiction.

class full access to the accommodations available on the Airbnb platform without imposing policies which render that platform discriminatory:

> [A]n injunction requiring Airbnb to allow plaintiff and other African-American residents of Oregon to join as members and to access the full accommodations available on Airbnb's platform, but without imposing on plaintiff and other members of the class policies which render Airbnb's platform discriminatory, including but not limited to the policies that provide hosts information about guests that necessarily reveal immutable characteristics, and by allowing hosts to make booking decisions based on those immutable characteristics.

Complaint, ¶ 40 (Prayer for Relief).

Apart from the prayer, the Complaint alleges that Airbnb hosts are able to discriminate due to the combination of: (1) their access to guests' names and photographs, which in turn give clues as to those guests' immutable characteristics; (2) their ability to receive booking requests only from prospective guests whose profile includes a photograph; and (3) their ability to deny booking requests from guests whose profile includes a photograph and full name. *Id.* ¶¶ 10, 12–13. Option 3 draws from these allegations and reasonably posits that the injunctive relief necessary to cure the alleged discrimination is an order requiring Airbnb to "remove user names and photographs from the booking process on [Airbnb's] website, mobile website, and native device applications." Defendant's Response to Plaintiff's Motion to Remand ("Def's Response") (ECF #14), p. 21. In short, the injunction that Airbnb suggests in Option 3 is the logical solution suggested by the pleadings themselves.

### 2. Impermissible Amendment to the Notice of Removal

Harrington challenges Option 3 as an impermissible amendment to the Notice of Removal, pointing out that Option 3 was first discussed by Airbnb in its opposition to the motion to remand. Prior to filing its opposition, Airbnb had offered Options 1 and 2 as possible

7 – FINDINGS AND RECOMMENDATIONS

measures of the amount in controversy (Notice of Removal, ¶ 15.b.ii), and filed the Declaration of Amanda Greene ("Greene Decl.") (ECF #3) to support measurement of the amount in controversy under Option 2.  Greene Decl., ¶¶ 6–10 (discussing Option 2 injunction requiring exclusive use of "instant booking" feature).  Harrington contends that Airbnb's evidentiary submissions to establish amount in controversy are restricted to those contained within the Notice of Removal.

Contrary to Harrington's suggestion, *Dart* held that 'a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions." *Ibarra*, 775 F.3d at 1197 (quoting *Dart*, 135 S.Ct. at 554).  Although Option 3 is not spelled out in detail in Airbnb's initial filing, the Notice of Removal specifically invokes CAFA jurisdiction, states that that the anticipated components of the amount in controversy include the defendant's cost of complying with any injunction and the amount of any losses that the defendant would suffer due to entry of a requested judgment, and alleges that the $5 million jurisdictional threshold is met.  Complaint, ¶ 15.b.i.

"When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith.  Similarly, when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart*, 135 S.Ct. at 553 (citations omitted).  Emphasizing the procedure for challenging a defendant's assertion as to amount-in-controversy, *Dart* noted legislative history from the 2011 amendments to the removal statute stating that "'[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather defendants may simply allege or assert that the jurisdictional

threshold has been met. Discovery may be taken with regard to that question. In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies.'" *Id*. at 554 (quoting H.R. Rep. No. 112-10, p. 16 (2011)). It would be antithetical to the core holdings of *Dart* to conclude that a defendant limits the possible avenues of proof available to establish the amount in controversy by taking a first stab at presenting such proof in the Notice of Removal. Under *Dart*, no such evidentiary submission is required in the Notice of Removal. Airbnb should not be punished for providing more information than was absolutely necessary in its Notice of Removal. Thus, this court rejects the argument that the failure to include Option 3 in the Notice of Removal precludes Airbnb from presenting it in response to Harrington's motion to remand.

### C. Costs of Eliminating Unlawful Discriminatory Policies

Harrington urges that to meet the jurisdictional threshold, Airbnb may not rely on financial losses it will incur to change its "illegal" practices or that it will suffer due to no longer engaging in "illegal" activity, such as those due to the defection of hosts from its program. Citing *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599 (7th Cir. 1997), and a host of cases from district courts across the country (*see* Motion to Remand (ECF #12), pp. 14–17 (Section II.B)), Harrington essentially argues that *none* of the costs that Airbnb incurs may be considered. Harrington contends that because the entire case rests on the premise that Airbnb's policies permit "illegal" conduct by its hosts, all costs Airbnb incurs for changing its business practices to eliminate those policies and their effects are necessarily costs to eradicate "illegal" conduct and therefore are not germane to consideration of the amount in controversy.

*Brand Name* was a price-fixing case in which the "only plausible form of injunctive relief [was an] order [obligating] the defendants to stop fixing prices." 123 F.3d at 609. The court

acknowledged that an "injunction against price fixing might prevent a defendant from engaging in lucrative unlawful transactions," a loss properly excluded from consideration. However, *Brand Name* drew a distinction between such losses and those that deprive the defendant of a legally protected interest, such as costs associated with the restructuring of business operations and other "lawful costs of compliance." *Id*. at 610. In short, this court does not read *Brand Name* as Harrington does. The case does not hold that an allegation of "illegal" activity, combined with a request for injunctive relief prohibiting the "illegal" activity, *ipso facto* eliminates from consideration all costs the defendant projects it will incur. Moreover, other courts in the Ninth Circuit have included a defendant's cost of compliance and lost revenues following analogous injunctive relief in determining whether the CAFA threshold has been met. *See*, *e.g., Anderson v. Seaworld Parks & Entm't, Inc.*, 132 F. Supp. 3d 1156, 1164 (N.D. Cal. 2015) (including value of future ticket sales that would be lost as the result of having to modify purportedly deceptive advertising in determining amount in controversy); *Bayol v. Zipcar, Inc.*, No. 14-CV-02483-TEH, 2015 WL 4931756, at *10 (N.D. Cal. Aug. 18, 2015) (in case challenging the legality of late fees imposed by Zipcar, lost income in the form of late fees that could not be collected as result of injunction was "properly included as the cost of compliance"); *Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1160 (C.D. Cal. 2013) (including monetary penalties paid to the state in the amount in controversy calculation, as they were part of "the object of the suit").

      This argument also improperly entangles consideration of the amount in controversy with consideration of the merits. *City of Portland v. Uber Techs., Inc.*, 2014 WL 7146927 at *2 (D. Or. Dec. 15, 2014) ("The City also argues that a business may not profit from illegal activity, but whether Uber's activity is illegal is a question reserved for the *merits* in this case. The City

cannot prevail on its motion to remand by putting the cart before the horse."); *Wallace v. Christensen*, 802 F.2d 1539, 1542 (9th Cir. 1986) ("the threshold question of jurisdiction must be addressed and answered before the merits may be reached and resolved"); *see also Kovacs v. Chesley*, 406 F.3d 393, 395–97 (6th Cir. 2005) (discussing the "critical difference between a dismissal for failure to meet the amount in controversy requirement and a dismissal following summary judgment" and noting that the a court considering a dismissal for failure to meet the amount in controversy requirement cannot examine defenses such as qualified immunity, res judicata, or the application of a statute of limitations). Accordingly, this court turns to consideration of Airbnb's proffer on the issue of the amount in controversy in this case.

### D. <u>Evaluation of the Evidence in Support of Option 3</u>

In a case seeking injunctive relief, the amount in controversy is the "value of the object of the litigation," *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977), or the "value of the particular and limited thing sought to be accomplished by the action." *Ridder Bros., Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944) (citations omitted). As discussed above, Airbnb reasonably interpreted the allegations of the pleadings to seek an injunction requiring Airbnb to "remove user names and photographs from the booking process on [Airbnb's] website, mobile website, and native device applications." Def's Response, p. 21.

As evidence of the likely cost of implementing "Option 3," Airbnb has submitted a declaration from Ruchit Solanski, Airbnb's Product Manager and a member of Airbnb's Discrimination Task Force. Solanski avers that the removal of profile photos and names from the booking process on Airbnb's websites and applications would cause Airbnb to incur over $6.3 million in design and engineering costs alone. Solanski Decl., ¶¶ 12–16. This estimate is based on the aggregate salary of employing a development team, "consisting of, at a minimum,

one product manager, three software engineers, one data engineer, two product designers, and one specialist," working full-time for three months, which Solanski estimates would cost $100,000 per month for a total of $300,000.  *Id*. ¶ 13.  Two additional iterations would bump the total cost of a final site-ready product to $900,000.  *Id*. ¶ 14.  Ensuring redesign across Airbnb's systems, including its email notification system, dashboard, host inbox, reservation request process, host calendar, guest profile page, and reviews and verifications page, would mean seven projects of similar scope, for a total estimated cost of $6.3 million.  *Id*. ¶ 15.  Solanski considers this a conservative estimate because it does not include costs associated with completion, incremental non-salary costs for development team members, product localization, or training operational and other support teams.  *Id*. ¶ 16.

Harrington urges this court to discount Solanski's credibility based on a contradiction between his declaration, which indicates that Airbnb "encourages—but does not require—users to include a photograph of themselves in their profile (Solanski Decl., ¶ 5) and a statement on Airbnb's website that Airbnb "require[s] all guests to upload a profile photo before making their first reservation."  Ross Declaration, ¶ 3, Ex. 2.  However, it is not entirely clear that those statements contradict each other, given that Airbnb's website simply mandates the upload of a "profile photo," without specifying one way or the other whether that profile photo must be a photograph of the user, or some other photo the user wishes to use instead.  Moreover, even assuming this is a contradiction, this court fails to see how it undercuts Solanski's testimony.  Harrington has not explained how this discrepancy would undermine Solanski's qualifications to testify about the costs associated with removal of names and photos from Airbnb's booking process.  Moreover, assuming Solanski is incorrect and Airbnb in fact does require a photograph

12 – FINDINGS AND RECOMMENDATIONS

of the user in their profile, it would logically require more design and engineering expense than already estimated by Solanski to remove these additional photos.

Harrington also takes aim at the possibility that Airbnb is including in its estimates fixed costs, or costs that will be incurred as a part of existing, ongoing work.  She also faults Airbnb with a lack of detail about what it means by "removing user names and photographs from the booking process," and again asserts that Airbnb is merely guessing what a court might likely order should it grant injunctive relief.  Harrington has countered Solanski's declaration with no evidence of her own, so this court is hard-pressed to do more than speculate about the impact of her challenges to the information in Solanski's declaration.

This court is persuaded that Option 3 represents a likely form of injunctive relief should Harrington prevail, and finds that the Solanski Declaration is sufficient to establish, by a preponderance of the evidence, that the amount in controversy in this case exceeds $5 million, and, therefore meets the jurisdictional threshold of CAFA.

### III.   Abstention

In the event this court determines it has jurisdiction over this case, Harrington urges the court to abstain, asserting that the development of Oregon law associated with public accommodations and civil liberties to the shared economy rightfully belongs in the hands of state court judges.  However, in each of its various guises, the abstention doctrine demands more justification than the general notion that a state court ought to have the first crack at interpreting state law to novel facts.  *See, e.g.*, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 728 (1996) (abstention is an "extraordinary and narrow" exception to a federal court's "strict duty to exercise the jurisdiction that is conferred on them by Congress."); *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 2017 WL 2855082 at *3 (9th Cir. 2017) ("'Abstention from the exercise of

federal jurisdiction is the exception, not the rule.' . . . 'Abdication of the obligation to decide cases can be justified . . . only in the exceptional circumstances where the order to the parties to repair to state court would clearly serve an important countervailing interest.'") (quoting *Colo. R. Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)); *Cedar Shake and Shingle Bureau v. City of Los Angeles*, 997 F.2d 620, 622 (9th Cir. 1993) (abstention doctrine is a "narrow exception to the district court's duty to decide cases properly before it.") (citation omitted)). No compelling reason to abstain is evident in the record, and this court should decline Harrington's invitation to do so.

## RECOMMENDATIONS

For the reasons stated above, Harrington's Motion to Remand (ECF #12) and associated request for attorney fees should be DENIED.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Friday, August 04, 2017. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

///
///
///
///
///

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED  July 21, 2017.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge